SHEA v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 6, 1919.)

No. 3311.

1. CRIMINAL LAW ⬤⟫863(1)—ADDITIONAL INSTRUCTION AFTER SUBMISSION OF CASE PROPER.

The giving of an additional instruction in a homicide case, after the jury had been out 30 hours, urging an agreement, if possible, on account of the expense and defendant's right to a speedy trial, *held* not error, where the judge did not ask the jury how they stood and expressed no opinion on the merits.

2. CRIMINAL LAW ⬤⟫1151—REFUSAL OF CONTINUANCE IN DISCRETION OF COURT.

The refusal of a continuance in a criminal case *held* not reversible error; the matter being one of discretion for the trial court.

3. CRIMINAL LAW ⬤⟫785(16)—INSTRUCTION AS TO WITNESS TESTIFYING FALSELY CORRECT.

The giving of an instruction in a criminal case, expressly provided for by statute, that a witness willfully false in one part of his testimony may be distrusted in others *held* not error; the court following the language of Code Civ. Proc. Alaska, § 673, stating the points on which a jury should be instructed.

In Error to the District Court of the United States for the Third Division of the District of Alaska.

Criminal prosecution by the United States against John Shea. Judgment of conviction and defendant brings error. Affirmed.

O. P. Hubbard, of Valdez, Alaska, and John F. Dore, of Seattle, Wash., for plaintiff in error.

William A. Munly, U. S. Atty., of Valdez, Alaska.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The plaintiff in error was charged with the murder of Rance W. Book on November 14, 1917, at Cordova, Alaska. Some ten days prior to the homicide Book had married a woman who was the divorced wife of the plaintiff in error. She had

gone to Seattle in October of that year and had met the plaintiff in error and agreed to resume the former relation. She returned to Cordova, intending, as she said, to sell her property and thereafter rejoin the plaintiff in error at Seattle. About three weeks later the plaintiff in error followed her to Cordova, and on the day on which he arrived he shot and killed the man whom she had married. The plaintiff in error was adjudged guilty of murder in the second degree. To reverse that judgment he brings this writ of error.

[1] Error is assigned to the following instructions given to the jury after they had deliberated for a time upon their verdict and were brought into court upon the court's order:

"You have now been out about 30 hours on this case, and while I have no doubt that any differences between you are honest and sincere, I want to call your attention to the fact that in no case can absolute certainty be expected. * * * If a large number or majority are of a certain opinion, the juror dissenting should carefully consider whether his doubt or difference from such opinion is a reasonable one, which makes no impression upon the minds of so many men equally honest and equally intelligent as himself. Upon the question of the expense in the trial of this case, I deem it proper to call your attention to the fact that this case has involved a very great expense upon the government. A large number of witnesses have been called from their homes and business important to themselves already for a considerable time; that they reside at Cordova, and a steamer is expected to pass through Valdez en route to Cordova within the next 12 hours, and there will probably not be another steamer for a week or more; also, in connection with the matter of expense, I call your attention to the difficulty of getting qualified jurors in a case of this kind, in so small a community, after so many have been disqualified, having already been called and excused on this case. We all desire to see justice administered, honestly and fairly. At the same time, justice to both the government and defendant requires that it be not attended with too great outlay or expense. The defendant has already been in custody over six months, and is entitled to have the case speedily determined. I call these facts to your attention as matters for your careful and honest consideration; but I wish to impress upon you that nothing that I have said should be understood as seeking to influence the conscientious and honest opinion which you or any one of you, as reasonable men, may entertain. If you have a reasonable doubt of the defendant's guilt, as the same is defined to you in the instructions already given, you should acquit the defendant; if you have not, you should convict him, and the degree of the crime is a matter which should not cause you to entirely disagree and fail to reach a proper verdict."

We are not convinced that the court in so instructing the jury committed reversible error. In 16 C. J. 1091, it is said:

"It is proper for the court, after the jury have deliberated for some time, to recall them to ascertain why they cannot agree, and to inquire as to whether there is any likelihood of an agreement. Providing nothing is said to coerce an agreement, or to indicate what verdict should be rendered, or that may be considered as an appeal to the jury to decide the case in some way even at the expense of honest convictions, the court may give the jury further instructions or advice calculated to assist them in coming to an agreement, may call their attention to the time taken in the trial and the great expense incurred therein, or which would be incurred by a retrial, may impress upon them the importance of the case, and urge them strongly to come to some agreement."

We do not think that the instruction here in question was more coercive or more invasive of the province of the jury than the instruc-

tion to the jury in United States v. Allis (C. C.) 73 Fed. 182, which was approved in Allis v. United States, 155 U. S. 117, 15 Sup. Ct. 36, 39 L. Ed. 91, where the court said:

"It is a familiar practice to recall a jury after they have been in deliberation for any length of time for the purpose of ascertaining what difficulties they have in the consideration of the case, and of making proper efforts to assist them in the solution of those difficulties. It would be startling to have such action held to be error, and error sufficient to reverse a judgment."

Again in Allen v. United States, 164 U. S. 492, 17 Sup. Ct. 154, 41 L. Ed. 528, the court approved an instruction of the court in which the jury were told it was their duty to decide the case if they could conscientiously do so, and that they should listen, with a disposition to be convinced, to each other's arguments; that in case the larger number were for conviction, a dissenting juror should consider why, if his doubt was a reasonable one, it made no impression upon the minds of so many other men equally honest and equally intelligent with himself. The court said:

"It certainly cannot be the law that each juror should not listen with deference to the arguments, and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury-room with a blind determination that the verdict shall represent his opinion of the case at that moment, or that he should close his ears to the arguments of men who are equally honest and intelligent as himself."

In Suslak v. United States, 213 Fed. 913, 130 C. C. A. 391, this court reviewed and held proper instructions to the jury not dissimilar from those which are here under review.

The plaintiff in error relies upon Peterson v. United States, 213 Fed. 920, 130 C. C. A. 398, in which we held certain instructions to the jury reversible error. In that case the court had inquired of the jurors as to how they were divided, and was informed that they stood five to seven; thereupon the court said to the jury, among other things, "The government has a right * * * to a verdict without further expenditure of time and money," and in conclusion the court expressed the belief that the jurors could honestly come to an agreement. We adverted to the fact that nowhere did the court make it clear that, however desirable it might be to avoid another trial and finally to terminate the prosecution, an agreement should not be reached in violation of the honest conviction of any one of the jurors.

In the case at bar there was no inquiry as to how the jury stood. Early in their deliberations they had asked for an instruction as to the relative punishment of murder in the first degree and manslaughter. This indicates that the jury were deliberating only upon the degree of the crime of which they should find the defendant guilty. Upon that question the court gave the instruction which is principally relied on for reversal and said:

"The degree of the crime is a matter which should not cause you to entirely disagree and fail to reach a proper verdict."

But at the same time the court charged the jury that if they had a reasonable doubt of the defendant's guilt they should acquit him, and

took pains to impress upon the jury that nothing that had been said should be understood as seeking to influence the conscientious and honest opinion which they or any one of them as reasonable men might entertain.

[2] Error is assigned to the denial of the motion of plaintiff in error for a continuance. The affidavits in support of the motion stated that the plaintiff in error had resided at Seattle for many years, and that his general reputation for peaceableness and orderly conduct was good; that a witness, Mary E. Book, was formerly his wife, visited Seattle, and registered at a hotel in the name of Mrs. John Shea, and sent for him to come and talk over their differences and troubles with a view to renewing the marriage relation; that an adjustment of their differences took place, and Mary E. Book stated that she would return to Cordova, and sell her personal effects, and come back to Seattle; and that those facts could be proven by four witnesses who were named; and the plaintiff in error made further affidavit that he was not possessed of sufficient means to bring the witnesses from Seattle, and was unable to pay the costs and expenses thereof. The affidavits failed to state that the facts so sought to be proved could not be established by other witnesses procurable at or near the place of trial, and in fact the substance of what he stated would be proven as to his relations with Mary E. Book were admitted by her on the trial.

In Isaacs v. United States, 159 U. S. 487, 16 Sup. Ct. 51, 40 L. Ed. 229, it was held that the action of a trial court upon an application for continuance is purely a matter of discretion unless it is clearly shown that discretion has been abused. In Crumpton v. United States, 138 U. S. 361, 11 Sup. Ct. 355, 34 L. Ed. 958, it was held that it is a matter of discretion with the trial court and not reviewable on writ of error whether, in a criminal case, a court will grant an application for process for witnesses and will delay trial pending the execution of the process. And in Goldsby v. United States, 160 U. S. 70, 16 Sup. Ct. 216, 40 L. Ed. 343, the court said:

"The right to summon witnesses at the expense of the government is by the statute (Rev. St. § 878 [Comp. St. § 1489]), left to the discretion of the trial court and the exercise of such discretion is not reviewable here."

In view of these authorities, we think the ruling of the court below is not reversible error.

[3] We are asked to take notice of an alleged error in the instructions to the jury, notwithstanding that no exception was taken thereto. The court instructed the jury that a witness who is willfully false in one part of his testimony may be distrusted in other parts. There was no error in this. The court followed the provisions of chapter 65 of the Code of Alaska, § 673, stating the points on which a jury are to be instructed, one of which is "that a witness willfully false in one part of his testimony may be distrusted in others." Similar instructions under similar statutes have been sustained in State v. Connors, 37 Mont. 15, 94 Pac. 199, State v. Kyle, 14 Wash. 550, 45 Pac. 147, and People v. Sprague, 53 Cal. 491.

We find no error. The judgment is affirmed.